IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel.    )
FREDERICK KIZER,                      )
                                      )
            Plaintiff,                )      No.  02 C 3400
      v.                              )
                                      )      Judge Robert W. Gettleman
DON HULICK, Warden, Menard Correctional )
Center,                               )
                                      )
            Defendant.                )

## MEMORANDUM OPINION AND ORDER

Petitioner Frederick Kizer filed an amended petition for habeas corpus relief pursuant to

the Anti-Terrorism and Effective Death Penalty Act ("ADEPA"), 28 U.S.C. § 2254.  Respondent

has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a)(2).  Petitioner has

filed a response in opposition to respondent's motion for summary judgment and requested an

evidentiary hearing.  For the reasons discussed below, the court grants respondent's motion for

summary judgment and denies petitioner's request for an evidentiary hearing.

## FACTS

In 1995, petitioner was convicted in the Circuit Court of Cook County of one count of

first degree murder, three counts of attempted first degree murder, and two counts of aggravated

battery with a firearm.  The conviction arose from a shooting that took place on the evening of

April 17, 1994, at 5352 South Paulina Street in Chicago, Illinois that resulted in the murder of

Willie Hall and the attempted murders of Vanessa Winslow, Kevin Richardson, and William

Richardson.  Petitioner initially denied that he had been at scene, or that he had taken part in the

shootings.  He told investigators that at the time the shooting took place, he had been with

Michael Byrd and Tara Callum at Byrd's home. Both Byrd and Callum were interviewed by

police and failed to corroborate the details of petitioner's alibi. Petitioner's trial counsel

attempted to locate Byrd and interview him in order to assess his value as a defense witness. He

was unsuccessful in his attempts and did not call Byrd at either of petitioner's trials.

Petitioner's first trial in the Circuit Court of Cook County, Illinois, resulted in a mistrial

after eleven of the twelve jurors voted for acquittal. At his second trial, the State presented a

written confession signed by petitioner admitting to the shootings. Additionally, Kevin

Richardson, Vanessa Winslow, and Demond Richardson, the brother of Kevin and William who

witnessed the incident, testified that petitioner was the shooter.

The jury returned a guilty verdict and the trial court sentenced petitioner to consecutive

prison terms of 50 years for the first degree murder count and 25, 15, and 10 years, for the three

attempted murder counts. On direct appeal, petitioner argued that the trial court erred in denying

his motion for substitution of judge after the mistrial. The Illinois Appellate Court affirmed the

judgment. See People of the State of Illinois v. Frederick Kizer, No. 1-95-3562 (Ill. App. 1st

Dist. July 22, 1997). Petitioner sought leave to appeal to the Illinois Supreme Court, which was

denied on June 3, 1998.

Petitioner then filed a pro se petition for relief pursuant to the Illinois Post-Conviction

Hearing Act, 725 ILCS 5/122-1 et seq., in which he alleged: (1) ineffective assistance of trial

counsel; (2) prosecutorial misconduct in improper closing arguments, such as vouching for

government witnesses' credibility, referring to notorious criminals, and referencing petitioner's

failure to testify; (3) judicial bias against him as evidenced by, among other things, the trial

judge's questioning of the state's expert at trial; (4) failure to establish petitioner's guilt beyond a

2

reasonable doubt; and (5) ineffective assistance of appellate counsel for failure to raise these issues on direct appeal. On December 23, 1998, petitioner's post-conviction petition was dismissed as frivolous and patently without merit. See People v. Kizer, 318 Ill. App. 3d 238, 240 (Ill. App. 1st Dist. 2000).

On appeal of the denial of his state post-conviction petition, petitioner, represented by the State Appellate Defender, argued for the first time that his 15-year and 10-year consecutive sentences were imposed in violation of 730 ILCS 5/5-8-4(a). Petitioner's counsel did not address any of the grounds raised in the pro se petition, other than summarizing the contents of that petition in the "Introduction" portion of the brief. Petitioner then moved pro se to file a supplemental brief to preserve the grounds raised in his pro se petition. Petitioner's pro se motion was opposed by the state on the ground that petitioner "does not have a Sixth Amendment right to have both representation of counsel and to also conduct portions of the proceedings on his own." On May 15, 2000, the appellate court denied petitioner's motion to file a pro se supplemental brief.

On July 10, 2000, however, petitioner (through counsel) was granted leave to file a supplemental brief in which he alleged that all of his consecutive sentences were unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). In an unpublished order, the appellate court reversed the consecutive nature of petitioner's ten-year sentence, but affirmed the consecutive nature of the fifteen-year sentence under state law and further refused to apply Apprendi retroactively. See People v. Kizer, No. 1-99-0733 (Ill. App. 1st Dist. Nov. 6, 2000). After petitioner sought rehearing, the appellate court issued a published opinion setting

forth a more comprehensive discussion of its <u>Apprendi</u> analysis (although it denied the petition

for a rehearing).

Petitioner (through counsel) then sought leave to appeal to the Illinois Supreme Court,

raising two issues: (1) the retroactivity of <u>Apprendi</u>, and (2) whether state law rendered his 15-

year consecutive sentence void (rather than merely voidable, as the appellate court had held).

Proceeding <u>pro</u> <u>se</u>, petitioner then sought leave to file a supplemental petition for leave to appeal

in which he addressed many of the issues raised in his initial state post-conviction petition, such

as ineffective assistance of counsel.  In an order dated March 27, 2001, the Illinois Supreme

Court denied petitioner's motion to file a supplemental brief, and on June 29, 2001, denied

petitioner leave to appeal.  Petitioner subsequently filed a petition for writ of certiorari in the

United States Supreme Court, which was denied on November 13, 2001.

On May 10, 2002, petitioner filed a habeas petition with this court, in which he argued

that his trial counsel had been ineffective and that the prosecutor made constitutionally

impermissible statements to the jury during closing arguments.  Respondent argued that

petitioner had procedurally defaulted these claims because he had not fully presented them to the

state courts.  This court agreed and dismissed the petition.  <u>U.S. ex rel. Kizer v. Walls</u>, 2004 WL

719342 (N.D. Ill. Apr. 1, 2004).

The Seventh Circuit granted petitioner a certificate of appealability on both the

ineffective assistance of counsel and prosecutorial misconduct claims.  The court of appeals,

holding that petitioner had fully presented those claims to the state courts, and that the claims

were not procedurally defaulted, remanded the case to "allow the district court the opportunity to

consider the merits" of petitioner's claims.  <u>Kizer v. Uchtman</u>, 2006 WL 265483 (7th Cir. Feb. 3, 2006) (unpublished order).

Petitioner then filed an amended habeas petition to which respondent filed an answer, arguing that petitioner's claims were meritless.  At that time, respondent also noted that petitioner's ineffective assistance claim might be procedurally barred because a state court had rejected it on an independent and adequate state ground, but that respondent had not obtained the necessary state post-conviction documents to make that determination. After receiving the post-conviction documents, respondent filed a supplemental answer to petitioner's amended petition. In that supplemental answer, respondent argued that petitioner's ineffective assistance claim was procedurally barred because the Cook County Circuit Court found it "patently frivolous and without merit" in its dismissal of the petition for post-conviction relief on December 23, 1998. Petitioner then filed a motion to strike the supplemental answer, arguing that respondent waived the procedural default defense by not raising it at an earlier time. This court found that respondent waived his right to raise the independent and adequate state law grounds defense and granted petitioner's motion to strike respondent's supplemental answer.

## **DISCUSSION**

On June 29, 2008, respondent filed the instant motion for summary judgment, asserting that there is no genuine issue as to any material fact and that Mr. Kizer's amended petition should be denied as a matter of law.

Summary Judgment

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. at 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Habeas Standard

To obtain habeas relief under the AEDPA, petitioner must establish that the state court proceedings resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." McFowler v. Jaimet, 349 F.3d 436, 446 (7th Cir. 2003). The state court's decision is "contrary to" clearly established federal law if: (1) the state

6

court arrives at a conclusion opposite to one reached by the United States Supreme Court on a question of law; or (2) the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent, and arrives at a result opposite to the Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir.2003). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams v. Taylor, 529 U.S. at 409. It is a difficult standard to meet, because unreasonable means "something like lying well outside the boundaries of permissible differences of opinion." McFowler, 349 F.3d at 447.


Ground 1:  Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel, Mr. Joseph P. McCaffrey, was constitutionally ineffective for failure to interview or call Michael Byrd as an alibi witness.[1] Petitioner argues that an evidentiary hearing is necessary because genuine issues of material fact exist concerning the impact that alibi witness testimony could have had on the jury during trial. Respondent argues that petitioner fails to demonstrate either that counsel's performance was deficient for not calling the alibi witnesses, or that petitioner was prejudiced because these witnesses did not testify. Further, respondent argues that the state post-conviction trial court rejected petitioner's

---

[1]Although petitioner also alleged that counsel should have called several members of the Hines family to impeach the testimony of a prosecution witness, Oscar Wilkerson, he has not raised this issue in response to the summary judgment motion, and thus has apparently waived it.

ineffective assistance of counsel claim on the merits, and this finding was neither contrary to, nor an unreasonable application of Strickland.

To prevail on a claim of ineffective assistance of counsel, a petitioner must first show that his counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687 (1984). This requires showing that counsel's representation "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Id. at 690. Second, a petitioner must show that the deficient performance prejudiced the defense by demonstrating that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. Id. at 696. The counsel's errors must be so serious as to deprive the petitioner of a fair trial, that is, a trial in which the result is reliable. Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Because the court begins with a strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance, petitioner faces a heavy burden in establishing a winning ineffective assistance of counsel claim. See Strickland, 466 U.S. at 690; United States v. Ruzzano, 247 F.3d 688, 696 (7th Cir. 2001).

According to petitioner he was not at the scene of the shootings, but instead at the home of his friend Byrd during the time the shootings took place. Petitioner claims that Byrd would have corroborated his alibi if called by the defense as a witness. Accordingly, petitioner argues that his trial counsel was constitutionally ineffective for failing to interview Byrd and to call him as an alibi witness. "The Supreme Court has made clear that counsel's failure to investigate potential defenses may constitute deficient performance under the first prong of Strickland." Davis v. Lambert, 388 F.3d 1052, 1062 (7th Cir. 2004). Petitioner further argues that trial

8

counsel's failures prejudiced his defense and if Byrd was called as a witness, the result of the trial would have been different.

In addressing this claim, the trial court considered petitioner's arguments and dismissed his petition for post-conviction relief as "frivolous and patently without merit." People v. Kizer, No. 94-CR-12774-01 (Cook Cty Cir. Ct. Dec. 23, 1998) at 13.  In reaching its decision, the trial court applied the two-pronged Strickland analysis to petitioner's claim of ineffective assistance of counsel.  The court found that trial counsel had not acted unreasonably when he did not interview Byrd or call him as an alibi witness because petitioner had failed to make the requisite factual showing to establish that these decisions fell below an objective standard of reasonableness.[2]  Id. at 9; See People v. Dean, 226 Ill. App. 3d 465, 468 (1st Dist. 1992).  The court noted that, generally, the decision to call a specific witness is a matter of trial strategy and "only in rare circumstances will failure to call a potential witness for the defense support an ineffectiveness claim."  People v. Kizer, No. 94-CR-12774-01 at 7-8 (citing People v. Flores, 128 Ill. 2d 66, 85-6 (1989); People v. Barry, 202 Ill. App. 3d 212, 216 (1st Dist. 1990)).  The court cited petitioner's failure to submit affidavits from potential witnesses, or produce evidence to support any of his other allegations of defective performance.  The court also noted that Byrd

---

[2]Trial counsel testified in his deposition in the instant habeas proceeding that he attempted to locate Byrd before petitioner's first trial, but failed to find him and consequently did not call him as an alibi witness.  Trial counsel could not recall the specific efforts he made to find Byrd, but he did testify to his customary practice of investigating witnesses on his own. Trial counsel further testified that when petitioner's first trial ended in a hung jury with eleven of the twelve jurors voting for acquittal, he did not renew efforts to find Byrd because he did not feel the need to modify his original trial strategy.

refuted petitioner's alibi claim when he was interviewed by the police.[3]  Further, the trial court

found that even if petitioner could offer evidence supporting his allegations, he "failed to

establish that the behavior of the trial counsel actually prejudiced his defense." People v. Kizer,

No. 94-CR-12774-01 at 9.  "[Petitioner's] conviction rested on a signed confession - a

confession which petitioner does not now challenge."  Id.  In addition, at trial the State presented

the eyewitness testimony of several victims who identified the petitioner as the shooter, as well

as other corroborating evidence.

The trial court's holding was neither "contrary to, or involved an unreasonable

application of clearly established federal law," nor "based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings."  28 U.S.C. §

2254(d)(1)-(2).  The court conducted a reasonable Strickland analysis based on the facts in the

record.  The trial judge was very familiar with the evidence in the case because he had presided

over both the first trial that ended in a mistrial and the second trial that resulted in Kizer's

conviction.  Based on this knowledge, the trial court reasonably found that Byrd was not a

credible alibi witness and that it was not objectively unreasonable for trial counsel to not

interview Byrd or call him to testify.  Accordingly, this court finds that the trial court's

determination that petitioner was not prejudiced by trial counsel's alleged ineffectiveness was

---

[3]Byrd made a series of inconsistent statements regarding his contact with petitioner on
the day of the shooting that call his credibility into doubt.  Petitioner was arrested around 12:00
a.m. on the night of the shootings.  The following morning, Byrd made a statement to the
Assistant State's Attorney and police that petitioner was with him from 11:30 p.m. to 1:30 a.m.
On May 12, 1994, Byrd changed his story and testified before the grand jury that he was not with
Kizer on the night of the shootings, but rather had seen him during the day.  Later, in a
deposition in the instant case taken on February 15, 2008, Byrd again changed his story and
testified that he could, in fact, corroborate petitioner's alibi.

not objectively unreasonable and, consequently, petitioner is not entitled to habeas relief on this claim.

Ground 2:  Prosecutorial Misconduct During Closing Argument

Petitioner contends that the prosecutor's misconduct during closing argument resulted in the denial of his constitutional right to due process.  Specifically, petitioner advances two instances of alleged prosecutorial misconduct, including that the prosecutor: (1) improperly commented on the petitioner's decision not to testify at trial; and (2) improperly compared the petitioner's defense to the conspiracy theories surrounding notorious assassins James Earl Ray and Lee Harvey Oswald.  In evaluating prosecutorial misconduct based on improper comments, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation and quotations omitted); see also Ruvalcaba v. Chandler, 416 F.3d 555, 565 (7th Cir. 2005).  To determine prosecutorial misconduct under Darden, the test is two-fold:  (1) the reviewing court must determine whether the prosecutor's comments in isolation were improper – if the comments are proper the analysis ends; and (2) if the comments are improper, the reviewing court must examine the comments in light of the record as a whole to determine whether they deprived the defendant of a fair trial.  See Whitehead v. Cowan, 263 F.3d 708, 728 (7th Cir. 2001).

In the first instance of alleged impropriety, the prosecutor made a statement on rebuttal

argument that petitioner contends remarked on his decision not to take the stand.[4]  The Fifth

Amendment forbids the prosecution from "inviting jurors to draw adverse inferences from a

defendant's decision not to testify by commenting, either directly or indirectly, on that decision."

United States v. Snook, 366 F.3d 439, 444 (7th Cir. 2004); See Griffin v. California, 380 U.S.

---

[4] The relevant portion of the prosecutor's closing argument was:
MR. FORD: Conspiracy is a funny thing. You see, in a conspiracy, the more
evidence there is against you, the more it is the case that all of these people
conspired to get you. Therefore, the stronger the evidence the People of the State
of Illinois have against Mr. Kizer, the more people that were out to get him.
That's the whole – changes then.

See, when everyone is out to get Mr. Kizer, it's everyone else's fault, but Mr.
Kizer's. He becomes the victim, doesn't he, because all these people from all
these disparities, benefit. And Richard – Rick Cenar, Jeanne Brundage, Vanessa
Winslow, all these people from all these different places are out to get him. So
now, he is the victim.

Only thing is – the only thing is when it comes to Frederick Kizer and what the
fuss simply is about, there is really no confusion about who the victims are. You
see on April 17th, 1994, Fuzzy here defined victims. He put holes in them. He put
holes in other human beings with lead.  But you go a couple of months later *and
you sit in Court, you sit in Court –*

MR. MCCAFFERY: Objection, Judge, as to reference of my client not taking the
stand. And counsel knows it.

MR. MCCAFFERY: It is not for the State's Attorney to comment.

THE COURT: He has the right to address your arguments, Mr. McCaffery.

MR. FORD: When you come here like that, and you remove Mr. Kizer from the
place where he chooses the victims, it is a much different story. *Now, he wants to
be the victim.*

Pet. Exh. 11 (D-203 to 205) (emphasis added).

12

609, 615 (1965) (holding in part that "the Fifth Amendment ... forbids ... comment by the prosecution on the accused's silence."). "Indirect comments are improper if either the prosecutor manifestly intended to refer to the defendant's silence or a jury would naturally and necessarily take the comments to be a remark on that silence." Snook, 366 F.3d at 444 (internal citations omitted). The first statement neither directly nor indirectly referred to the petitioner's decision not to testify and is therefore not improper. The prosecutor was interrupted by defense counsel's objection before his utterance was complete. During his objection, trial counsel asserted that the prosecutor was necessarily commenting on the petitioner's silence, but the trial judge disagreed and overruled the objection. Once the prosecutor was allowed to finish his thoughts, it became clear that his "You sit in Court. You sit in Court... " comment was intended as a rhetorical device used to rebut defense's conspiracy theory. The judge did not understand the comment to be a remark on the petitioner's silence, nor was there any indication from the context that the jury would "naturally and necessarily" understand the comment to be to a remark on the petitioner's silence.

The prosecutor's second comment, referring to James Earl Ray and Lee Harvey Oswald, was also not improper.[5] The comment was not central to the prosecution's theory, but made in rebuttal to defense's closing argument that the police had fabricated and forged petitioner's

---

[5]The relevant portion of the prosecutor's rebuttal argument was:

MR. FORD: See conspiracies are easy. The stronger the evidence, the more they're out to get me. You whisper conspiracy, James Earl Ray, not guilty.

MR. MCCAFFERY: I object.

MR. FORD: Lee Harvey Oswald, not guilty.

confession and that the eyewitnesses identifications of petitioner were unreliable. This court

agrees with respondent that although these remarks were not desirable, they did not taint the trial

with unfairness so as to deny petitioner of his right to due process. See Ruvalcaba, 416 F.3d at

555 (quoting Darden, 477 U.S. at 181).

Even if one or both of the prosecutor's comments were improper, such error was

harmless. An error is harmless unless it "had substantial and injurious effect or influence in

determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see Aleman

v. Sternes, 320 F.3d 687, 689 (7th Cir. 2003) (applying Brecht harmless error analysis to a

prosecutor's improper remarks on a defendant's silence). Given the peripheral nature of the

prosecutor's comments, the speculative nature of any adverse impact the comments may have

had on the jury, and the substantial evidence of petitioner's guilt, the petitioner's claim of

prosecutorial misconduct fails on the merits.

### CONCLUSION

For the reasons set forth in this opinion, respondent's motion for summary judgment is

granted. The petition for habeas corpus is denied.

**ENTER:**      **December 9, 2008**

_____
   **Robert W. Gettleman**
   **United States District Judge**